The People of the State of Illinois, Defendant in Error, v. Martin S. Furman, Plaintiff in Error.
In re Commitment of Martin S. Furman, Plaintiff in Error, for Contempt of Court in the Case of People ex rel. Oscar Nelson v. Roseland State Savings Bank.

Gen. No. 36,011.

Opin-
ion filed February 8, 1933.

BENJAMIN H. VANDERVELD, for plaintiff in error; EUGENE E. BRUCKNER, of counsel.

JOHN A. SWANSON, State's Attorney, for defendant in error; ANGUS ROY SHANNON, ELWOOD G. GODMAN and EDWARD R. JOHNSTON, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.
By this writ of error it is sought to review an order of the circuit court of Cook county, committing Martin S. Furman to the county jail of Cook county for an alleged direct contempt of court, based upon

a charge of giving false testimony in a proceeding instituted in the circuit court of Cook county by one Reinecke, receiver of the Roseland State Savings Bank, to discover assets of this bank.

The record consists of the order of commitment, and the assignment of errors. The order of commitment recites the following:

"That the court finds it necessary in aid of the receivership estate and in aid of the rights and duties of said receiver to examine witnesses who the court finds have or had information and knowledge of the existence, whereabouts, and character of assets and property which rightfully belong to the receiver as part of the receivership estate, but which said receiver has not been able to find, locate, or reduce to his possession.

"That upon a hearing of said cause on the 27th day of April, 1932, and at hearings held thereafter in open court pursuant to said petition, said petitioner and receiver herein was duly represented by counsel, and that the respondent, Martin S. Furman, had been subpoenaed to be present as a witness to testify in open court at said hearings, and tendered himself for examination; and, after having been duly sworn, appeared and testified at said hearings.

"That at a hearing on April 27, 1932, the said Martin S. Furman testified that approximately eight months prior to April 27, 1932, he had collected the sum of $800, which sum he did not deposit in any bank for the reason that he feared the solvency of the banks, but did turn over said money in currency to his wife, Pauline Furman; that she kept said money for him in their home, but several months later returned said money to him, and he thereupon deposited said money in an iron safe in his office, and used said money with which to pay several items of indebtedness owing by him.

"That at a subsequent hearing, on the 28th day of April, 1932, the wife of said respondent, Pauline Furman, appeared as a witness at said hearing and testified that in the month of January, 1932, said respondent, Martin S. Furman, turned over and delivered to her the sum of $800 in currency; that she kept said sum of money in a clothes closet in their home, and returned it to respondent in two installments in the month of March, 1932.

"That at said hearing of April 28, 1932, respondent was recalled as a witness and admitted the said sum of $800 was collected by him on January 19, 1932, and that delivery of said sum of money to his wife was made on or about the 19th day of January, 1932, and that said sum was returned to him by his wife in March of 1932, in installments, as had been testified to by his said wife; and said respondent admitted that his testimony in respect to the time of collection of said sum of $800 and the time of delivery thereof to his said wife, as given at the previous hearing on April 27, 1932, was untrue; and said respondent, Martin S. Furman, did further testify that on and after the 20th day of January, 1932, he deposited substantial sums of money to his credit in the South Chicago Savings Bank, despite the fact that he had previously testified on the 27th day of April, 1932, he did not deposit said sum of $800 in a bank because he was afraid any bank might close.

"That the court finds from the testimony of Pauline Furman, as well as from admissions made by said respondent, said respondent, Martin S. Furman, wilfully testified falsely as to a material matter, the subject matter of investigation by the court, and has been guilty of a direct contempt, which was wilfully committed with the intent to embarrass and impede the administration of justice in said cause.

"That it is ordered that the respondent, Martin S. Furman, on the facts as above found, occurring in open court, be and he is hereby for said contempt committed to the County Jail for a period of ten days, or until otherwise discharged by due process of law."

This order is erroneous for two reasons, viz.: no facts are set forth in the order showing how or why any of the matters or things inquired about were in the slightest decree material to the issue; neither does it appear from the order that Martin S. Furman was present in court when the order was entered. In general, the charge set forth in the order upon which the alleged perjury is based is that the respondent collected $800 from a person not named, and that on one occasion, in the hearing referred to, among other things, testified that he had turned it over to his wife on a certain date, and on another occasion testified that he had deposited some of the money in the South Chicago Savings Bank on another date. Nowhere in the order does it appear that the Roseland State Savings Bank had any interest whatever in the fund about which respondent testified, or that respondent was indebted to Roseland State Savings Bank. Therefore, his testimony was not material to any issue before the court.

In *People v. Bain,* 268 Ill. App. 192, this court said: "The order is fatally vulnerable in two respects. It does not affirmatively show that Robert A. Bain was present in court when the order was entered. That this is necessary has been repeatedly held. *Rawson v. Rawson,* 35 Ill. App. 505; *People v. Saylor,* 238 Ill. App. 142; *Tunnell v. People,* 253 Ill. App. 422; *Barclay v. Barclay,* 184 Ill. 471. It is argued that as the order recites that a hearing was had on November 18, 1931, the law will presume that the order of commitment was entered on that date and that Robert Bain

was present in court at the time. In a criminal contempt proceeding no presumptions of law obtain. Cases involving civil contempt are not in point. The presence of the alleged contemnor cannot be inferred but must be shown affirmatively by the record. *Harris v. People,* 130 Ill. 457; *People v. McGrane,* 336 Ill. 404; *People v. Moran,* 342 Ill. 478; *People v. Saylor,* 238 Ill. App. 142; *Tunnell v. People,* 253 Ill. App. 422.

"The second reason for holding the order void is that no facts appear therein from which we can determine whether the alleged false testimony was material to the issues heard. The order must set forth the facts so fully and certainly as to show that the contempt was actually committed. *People v. Hogan,* 256 Ill. 496; *People v. Rockola,* 346 Ill. 27. The assertion in the order that it was material to ascertain what financial interest Robert A. Bain had in the South Side Agency & Loan Corporation, is merely a conclusion and does not show that this inquiry was material in an investigation of the assets of John Bain, Inc. *People v. Freeman,* 256 Ill. App. 233, is cited by counsel for the State as holding to the contrary, but an examination of the opinion and of the record in that case shows that the testimony is set forth in full in the form of questions and answers in the order of commitment. It was virtually a bill of exceptions, from which the reviewing court could ascertain the materiality of the testimony. The same is true in the case of *People v. Rockola,* 346 Ill. 27."

For the reasons stated, and in view of the above holding, the order of the circuit court is reversed.

*Reversed.*

WILSON, P. J., and HEBEL, J., concur.