People of the State of Illinois, Defendant in Error, v. Joseph T. Harrington, Plaintiff in Error.

Gen. No. 40,602.

Opinion filed June 28, 1939.

HARRINGTON & McDONNELL, of Chicago, for plaintiff in error; BERNARD J. McDONNELL, of counsel.

Thomas J. Courtney, State's Attorney, for defendant in error; Edward E. Wilson, John T. Gallagher, Melvin S. Rembe and Blair L. Varnes, Assistant State's Attorneys, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

This writ of error is sued out to reverse an order entered by Judge Green, one of the judges of the municipal court of Chicago, adjudging Joseph T. Harrington, an attorney at law (hereinafter referred to as defendant), guilty of a direct contempt of court and sentencing him to confinement in the county jail of Cook county for the term of two days.

The material part of the judgment order, entered November 15, 1938, reads as follows:

"That on this day, during a regular session of this Court duly convened, while the court was in open session in Branch No. 44 in the Criminal Court House of Cook county . . . hearing a cause pending and undetermined before this court entitled People of the State of Illinois vs. Carl Casperson, . . . the said defendant, Joseph T. Harrington, appeared before the bar of this Court, pushed aside the witnesses who were present before the court to testify in said case . . . and addressed the Judge of this Court, in a loud and boisterous manner pushing witnesses, litigants and attorneys aside and having no interest in said case whereupon the following colloquy took place between the Judge of this Court and the said defendant:

" 'Mr. Harrington: I would like to interrupt. After I left the court room—

" 'The Court: Step aside. I have my call, and I am hearing this case on trial. Mr. Bailiff will you have this counsel step aside?

" 'Mr. Harrington: Judge—

" 'The Court: I have my call, I would like to hear this case.

" 'Mr. Harrington: I want to address you on a matter that you did after I left the court room, in reference to my own matter.

" 'The Court: Are you going to step aside?

" 'Mr. Harrington: I want to address the Court.'

And thereupon the court directed the bailiff of this court to remove the defendant from the bar of the court, and while the said bailiff was attempting to remove said defendant as aforesaid the defendant pulled away from said bailiff and continued loudly to address the court; and thereupon upon the order of the court two bailiffs took the said defendant Joseph T. Harrington into custody and removed him from the court room.

"And the Court, upon consideration of the premises, further finds that said conduct of the said Joseph T. Harrington as aforesaid was wilful and of such a nature as to impede the due administration of justice, and that the said Joseph T. Harrington is guilty of a direct contempt of this Court.

"And now the said Joseph T. Harrington, being personally present in open court, it is ordered and adjudged that the said Joseph T. Harrington is guilty of a direct contempt of this court, and that he be confined in the County Jail of Cook County for the term of two days."

Immediately after the entry of the above order the trial court entered the following order: "Motion defendant to file stay bond pending application for supersedeas to Appellate Court sustained. Bail $100.00 instanter. Stay of Mittimus 30 days." Upon the same day the court entered the following order: "Failure to give bail instanter Mittimus to issue."

The first contention raised by defendant, a practicing lawyer at the Chicago bar for many years, is that the judgment order is insufficient in that "it is wholly silent as to the circumstances surrounding defendant's appearance and his attempt to address the Court; the matter which he desired to bring to the attention of

the Court and the capacity in which he appeared.''
We think this contention is a meritorious one. Defend-
ant filed a motion, supported by several affidavits, to
vacate the judgment order. The motion was denied.
Certain averments in the affidavits that bitterly attack
findings of fact in the judgment order as unfair and
not warranted by the actual facts cannot be consid-
ered; but the affidavits set forth that on the same day
that the contempt order was entered and shortly be-
fore the proceeding that resulted in that order, de-
fendant, as counsel in another proceeding, appeared
before Judge Green, who was substituting for Judge
Rooney in the felony branch, and during the course of
the hearing of that proceeding the State's Attorney
made application for the release of certain exhibits that
had been impounded by Judge Rooney; that Judge
Green ruled that because the exhibits had been im-
pounded by Judge Rooney the State's Attorney would
have to make his application before Judge Rooney; that
after the first proceeding had been disposed of defend-
ant left the court room of Judge Green and shortly
thereafter he learned that Judge Green, upon an *ex
parte* motion of the State's Attorney, had entered an
order vacating the said impounding order and order-
ing that the exhibits be turned over to the State's At-
torney. The contempt order contains no findings as
to the first proceeding, nor any reference to it. Indeed
that order does not even find that defendant was an
attorney at law. Defendant argues that the gravamen
of the offense charged against him is that he interrup-
ted the orderly procedure of the trial court's work, but
that if the trial court had made full and fair findings
of fact as to the first proceeding it would clearly ap-
pear that it was necessary for defendant to at once
inform the court that irreparable injury would result
to defendant's client from the action of the trial court
in vacating the impounding order and ordering that
the exhibits be turned over to the State's Attorney;

that if defendant failed to immediately call the attention of the court to the situation the exhibits would be no longer under the control of the court and any later attempt by defendant to have the court correct its action would be useless.

It is clear from the judgment order that defendant was attempting to convey to the trial court the fact that an emergency existed that required the court's immediate attention; and it is equally clear that the trial court would not allow defendant an opportunity to state the reason why he was addressing the court. Plaintiff does not dispute defendant's claim as to what occurred in the first proceeding, but it argues that what happened there did not justify defendant in "interrupting a court engaged in the trial of a case especially after the court admonishes the interloper to desist." We cannot agree with this argument of plaintiff. All judges know that occasions arise when an attorney, in the interests of justice, must interrupt the court while he is engaged in hearing a cause. Emergency motions are not uncommon, and a trial judge has no right to refuse to hear one merely because he is trying a cause. Justice would sometimes be defeated if such a practice were followed. The good faith of an officer of the court must be assumed until the contrary appears, and when an attorney states to the court that he desires to present an emergency matter it is the duty of the court to acquaint himself sufficiently with the nature of the motion so that he may properly determine whether or not the interests of justice demand an immediate hearing. While it is the duty of an attorney to show proper respect to the trial judge, it is also the duty of the trial court to show due respect and consideration to an attorney, and not to manifest hostility toward him. (*People v. Rongetti*, 344 Ill. 107, 122.) By the Ancient Precedents contained in the Canons of Judicial Ethics, adopted by the American Bar Association, judges are reminded that "patience and gravity

of hearing is an essential part of justice," and that a judge should not "show quickness of conceit in cutting off evidence or counsel too short." (Reports of American Bar Association, Vol. 62, 1937, pp. 1123, 1124.)

While the findings of fact contained in a direct contempt order must be assumed to be true, an order committing one for direct contempt in the presence of the court "should be a full, certain and complete recitation of all the material facts occurring at the time and constituting the offense so that the reviewing court may be able to determine whether or not the same amounts to a contempt." (See *People v. Salbar*, 282 Ill. App. 506, 508.) In that case it was said (p. 509):

"It does not appear in the order whether the contemnor was appearing in court as a lawyer in a trial of any one of the cases which the court was hearing, or appearing as a witness, an interloper, or otherwise. From the order presented for our consideration, this court cannot visualize the circumstances and the scene presented at the time." The argument of the State's Attorney that we must treat defendant as an "interloper" demonstrates that the judgment order does not contain a full and fair statement of all of the material facts. From certain averments in the affidavit filed by defendant in support of the motion to vacate the contempt order, it is reasonable to infer that Judge Green, at the time of the proceedings that resulted in that order, was angry with defendant for having made serious charges against certain public officials, in the first proceeding, which charges Judge Green, apparently, believed to be entirely unwarranted; but if such was his state of mind it was his duty, nevertheless, to maintain his judicial poise, and not to deny defendant a reasonable opportunity to state his reason for addressing the court. Justice demands that the contempt order in this case be reversed and the cause remanded.

The judgment order should have contained, in addition to the findings of fact already in the contempt

order, sufficient findings of fact as to the first proceeding to apprise us whether or not the trial court in that proceeding refused to vacate the impounding order and whether or not the trial court in the absence of defendant vacated the impounding order and ordered the exhibits turned over to the State's Attorney. The judgment order should also have contained a finding as to whether or not defendant appeared as an attorney in the first proceeding. Without such additional findings of fact it cannot be fairly determined whether the trial court was justified in finding defendant guilty of direct contempt.

For the reasons stated herein the contempt order in this case is reversed and the cause remanded so that such further proceedings may be had in the trial court as are not inconsistent with the views expressed herein.

*Contempt order reversed and cause remanded.*

JOHN J. SULLIVAN, P. J., and FRIEND, J., concur.